1  THOMAS P. O'BRIEN
   United States Attorney
2  CHRISTINE C. EWELL
   Assistant United States Attorney
3  Chief, Criminal Division
   MICHAEL ZWEIBACK (Cal. Bar No. 143549)
4  Assistant United States Attorney
        1200 United States Courthouse
5       312 North Spring Street
        Los Angeles, California 90012
6       Telephone: (213) 894-2690
        Facsimile: (213) 894-8601
7       E-mail:  michael.zweiback@usdoj.gov

8  Attorneys for Plaintiff
   United States of America
9

10                 UNITED STATES DISTRICT COURT

11           FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,      ) CR No. CR08-00747
                                   )
13                Plaintiff,       ) PLEA AGREEMENT FOR DEFENDANT
                                   ) JASON MICHAEL MILMONT
14       v.                        )
                                   )
15  JASON MICHAEL MILMONT,         )
                                   )
16                                 )
                                   )
17                Defendant.       )
                                   )
18  _____

19       1.   This constitutes the plea agreement between JASON

20  MICHAEL MILMONT ("defendant") and the United States Attorney's

21  Office for the Central District of California ("the USAO") in the

22  above-captioned case.  This agreement is limited to the USAO and

23  cannot bind any other federal, state or local prosecuting,

24  administrative or regulatory authorities.

25                              PLEA

26       2.   Defendant gives up the right to indictment by a grand

27  jury and agrees to plead guilty to a single-count information in

28  //

the form attached to this agreement or a substantially similar form.

## NATURE OF THE OFFENSE

3.   In order for defendant to be guilty of the single-count information, which charges a violation of Title 18, United States Code, Section 1030(a)(4), the following must be true: (1) the defendant knowingly accessed without authorization, or exceeded the authorized access, of a computer used in interstate or foreign commerce; (2) the defendant did so with the intent to defraud; (3) by accessing the computer without authorization or exceeding authorized access to the computer, the defendant furthered the intended fraud; and (4) by accessing the computer without authorization or exceeding authorized access to the computer, the defendant obtained anything of value.  Defendant admits that defendant is, in fact, guilty of this offense as described in the information.

## PENALTIES AND RESTITUTION

4.   The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1030(a)(4), is five years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

5.   Supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if

2

1  defendant violates one or more of the conditions of any
2  supervised release imposed, defendant may be returned to prison
3  for all or part of the term of supervised release, which could
4  result in defendant serving a total term of imprisonment greater
5  than the statutory maximum stated above.

6        6.   Defendant also understands that, by pleading guilty,
7  defendant may be giving up valuable government benefits and
8  valuable civic rights, such as the right to vote, the right to
9  possess a firearm, the right to hold office, and the right to
10 serve on a jury.

11       7.   Defendant further understands that the conviction in
12 this case may subject defendant to various collateral
13 consequences, including but not limited to, deportation,
14 revocation of probation, parole, or supervised release in another
15 case, and suspension or revocation of a professional license.
16 Defendant understands that unanticipated collateral consequences
17 will not serve as grounds to withdraw defendant's guilty plea.

18       8.   Defendant understands that defendant will be required
19 to pay full restitution to the victim(s) of the offenses.
20 Defendant agrees that, in return for the USAO's compliance with
21 its obligations under this agreement, the amount of restitution
22 is not restricted to the amounts alleged in the count to which
23 defendant is pleading guilty and may include losses arising from
24 charges not prosecuted pursuant to this agreement as well as all
25 relevant conduct in connection with those charges.   The parties
26 hereby stipulate and agree that the total amount of restitution
27
28                                 3

1   owed by the defendant is $73,866.36.  Defendant further agrees

2   that defendant will not seek the discharge of any restitution

3   obligation, in whole or in part, in any present or future

4   bankruptcy proceeding.

5                            FACTUAL BASIS

6        9.   Defendant and the USAO agree and stipulate to the

7   statement of facts provided below.  This statement of facts

8   includes facts sufficient to support a plea (or pleas) of guilty

9   to the charges described in this agreement and to establish the

10   sentencing guideline factors set forth in paragraph 11 below.  It

11   is not meant to be a complete recitation of all facts relevant to

12   the underlying criminal conduct or all facts known to defendant

13   that relate to that conduct.

14   From March 8, 2007 to September 2, 2007, defendant JASON MICHAEL
     MILMONT (hereinafter, "defendant") operated a peer to peer botnet
15   that he created to obtain credit card account and password
     information from victim computer users.  A bot network or
16   "botnet" is a network of bots that are commonly used to attack
     computer networks or fraudulently obtain information from users
17   on the internet through the surreptitious installation of
     "malware."  "Bot" is a term derived from the word "robot" which
18   commonly refers to a software program that performs repetitive
     functions automatically, such as indexing information on the
19   Internet or performing tasks.  Here, the term bot refers to a
     computer that has been infected with a program used to control
20   the computer.

21   In order to build his botnet, defendant developed an application
     or malware which would be surreptitiously installed in a victim's
22   computer and allowed defendant to gain access and control over
     the victim's computer.  The malware he developed became commonly
23   known as the Nugache Worm, which embedded itself within the
     Windows operating system.  The malware was developed over time
24   and went through three main stages of development or versions.

25   Defendant, in the past, used Limewire as a Trojan to infect the
     victim computers.  He developed a fictitious website that would
26   offer the free installation of Limewire; however, unbeknownst to
     the user, the Limewire application was embedded with the malware.

27

28                                4

In more recent time, defendant spread the malware using instant
messenger Spam.  The malware, assuming an infected machine ran
AOL instant messenger, would spread itself by causing Spam to be
disseminated through the victim's buddy list.  Once the buddy
received the message, the message would request the user to view
a photo on a website such as MySpace.com or Photobucket.com.  The
instant message would provide a link to said website.  However,
the link would not direct the user to the presumed legitimate
website; but a spoofed website that appeared to be legitimate.

Once directed to the spoofed website, the user would be asked if
he/she wanted to save or open the file.  If either was done, the
file was given another name; however, it was the executable form
of the Nugache Worm.  Once the file was opened, it decompressed
and installed itself on the victim's computer.  The compressed
file had two parts, part one was the actual application or
payload, and part two was a series of links, up to 100, to other
infected computers.  The worm was spread throughout the internet
and thus, infected computers which operated in interstate and
foreign commerce.

The malware would connect with other infected computers and
receive lists of links to be distributed to other computers in
the botnet.  Defendant wrote the program to use five of the ten
possible connections instantly, leaving five connections open to
allow other infected machines to connect when they came online.
On average, defendant controlled 5,000 to 15,000 computers at any
given time.  Each infected machine would generate an
identification number for itself, in order that the machine was
uniquely identified in the botnet.  Defendant would use this
identification number to issue commands directly to the desired
machine and have a way to uniquely identify all the machines
within the botnet; thus, ensuring he had a strong grasp on the
botnet's size and depth.

The third version of defendant's malware was capable of capturing
targeted data entered in Internet Explorer using a proprietary
function he called "Form Log."  It also allowed defendant to send
a list of commands, as opposed to earlier versions that only
allowed for the dissemination of one command at a time.  The
malware was invisible to the Windows Task List Manager for the
following Windows operating systems - NT, 2000, and XP.  It also
had a keylogger program function attached to it.  In addition, it
possessed an update routine, that allowed defendant to update the
malware remotely in an automated fashion.

In order to control/monitor the entire botnet, defendant created
a graphical user interface for easy access from his home server.
The server had the ability to make three types of connections-
link, client, and control.  The command would issue to one
machine, and then that machine would transmit the command along
to other machines.  The process would continue until all the

machines were seemingly issued the command.

Defendant who was in Cheyenne, Wyoming, used his botnet for a denial of service attack against a local Southern California online business which is located within the Central District of California and for the theft of personal identification information from infected victim computers all across the United States.  All of the data stored on the compromised machines would be available to defendant, including, but not limited to, credit card information.

Defendant obtained user names, passwords, and account numbers from the Form Log function when a user successfully logged into any of his/her online accounts requiring said items. After a period of time passed, defendant would initiate a command that instructed all the computers in his botnet to send all the information they had harvested to his computer.  Defendant stored all of the compromised victim information on his computer or server.  After defendant gained the information, he would be able to use the captured information to gain pertinent account details, and more importantly, he could take control of the account.  As defendant well knew, the theft of this personal identification information was illegal.

Defendant ordered items online with the personal information he fraudulently harvested from his victims.  After obtaining this information from a victim's computer, defendant used his/her financial institution's online user name and password to access the account online.  Defendant then changed the victim's e-mail address to a similar e-mail that he controlled and the mailing address to an address in Cheyenne, Wyoming, typically an address that was listed for sale.  Defendant then would order items in the victim's name, to be delivered to Cheyenne, Wyoming.

On April 13, 2007, defendant made a purchase in the amount of $1422.00 from Hinsite Global Technologies with a victim's stolen credit card information.  On or about June 4, 2007, defendant used a fraudulently obtained credit card account number, last four digits of 5943, from a victim with the initials E.L. to make an on-line purchase in the amount of $379.90.  After the items were ordered, defendant had the items shipped to a vacant residence in the Cheyenne, Wyoming area.

When an account was compromised, defendant would either blank out the telephone number, or if the online financial institution required it, he would change the telephone number to a phone number he controlled.  The numbers he created for this purpose were created using Skype.  Defendant registered multiple, seemingly Cheyenne, Wyoming area numbers with the prefix 307 with Skype.  He paid for this service by using the credit card numbers harvested from his botnet.  In total, after his eighteenth birthday, defendant caused $19,594 worth of loss and damage from

1  his activities.

2  <u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

3      10.   By pleading guilty, defendant gives up the following

4  rights:

5          a) The right to persist in a plea of not guilty.

6          b) The right to a speedy and public trial by jury.

7          c) The right to the assistance of legal counsel at

8  trial, including the right to have the Court appoint counsel for

9  defendant for the purpose of representation at trial.  (In this

10  regard, defendant understands that, despite his or her plea of

11  guilty, he or she retains the right to be represented by counsel

12  - and, if necessary, to have the court appoint counsel if

13  defendant cannot afford counsel - at every other stage of the

14  proceedings.)

15          d)   The right to be presumed innocent and to have the

16  burden of proof placed on the government to prove defendant

17  guilty beyond a reasonable doubt.

18          e)   The right to confront and cross-examine witnesses

19  against defendant.

20          f)   The right, if defendant wished, to testify on

21  defendant's own behalf and present evidence in opposition to the

22  charges, including the right to call witnesses and to subpoena

23  those witnesses to testify.

24          g) The right not to be compelled to testify, and, if

25  defendant chose not to testify or present evidence, to have that

26  choice not be used against defendant.

27

28                              7

1    By pleading guilty, defendant also gives up any and all
2  rights to pursue any affirmative defenses, Fourth Amendment or
3  Fifth Amendment claims, and other pretrial motions that have been
4  filed or could be filed.

5                        WAIVER OF DNA TESTING

6    11.  Defendant has been advised that the government has in
7  its possession items of physical evidence seized during the
8  execution of the search warrant at his residence that could be
9  subjected to DNA testing. Defendant understands that the
10 government does not intend to conduct DNA testing of any of these
11 items.  Defendant understands that, before entering a guilty plea
12 pursuant to this agreement, defendant could request DNA testing
13 of evidence in this case.  Defendant further understands that,
14 with respect to the offense to which defendant is pleading guilty
15 pursuant to this agreement, defendant would have the right to
16 request DNA testing of evidence after conviction under the
17 conditions specified in 18 U.S.C. § 3600.  Knowing and
18 understanding defendant's right to request DNA testing, defendant
19 knowingly and voluntarily gives up that right with respect to
20 both the specific items listed above and any other items of
21 evidence there may be in this case that might be amenable to DNA
22 testing. Defendant understands and acknowledges that by giving up
23 this right, defendant is giving up any ability to request DNA
24 testing of evidence in this case in the current proceeding, in
25 any proceeding after conviction under 18 U.S.C. § 3600, and in
26 any other proceeding of any type.  Defendant further understands

28                               8

1  and acknowledges that by giving up this right, defendant will

2  never have another opportunity to have the evidence in this case,

3  whether or not listed above, submitted for DNA testing, or to

4  employ the results of DNA testing to support a claim that

5  defendant is innocent of the offense to which defendant is

6  pleading guilty.

7                          SENTENCING FACTORS

8       12.  Defendant understands that the Court is required to

9  consider the United States Sentencing Guidelines ("U.S.S.G." or

10 "Sentencing Guidelines") among other factors in determining

11 defendant's sentence.  Defendant understands that the Sentencing

12 Guidelines are only advisory, and that after considering the

13 Sentencing Guidelines, the Court may be free to exercise its

14 discretion to impose any reasonable sentence up to the maximum

15 set by statute for the crimes of conviction.

16      13.  Defendant and the USAO agree and stipulate to the

17 following applicable sentencing guideline factors:

18 Base Offense Level  :     6   [U.S.S.G. § 2B1.1.(a)(2)]

19 Specific Offense
   Characteristics

20
   Loss                :     4   [U.S.S.G. § 2B1.1(b)(1)(C)]
21 between $10,001
   and $30,000]

22
   Sophisticated
23 Means                :     2   [U.S.S.G. § 2B1.1(b)(9)]

24 Intent to obtain
   personal information:     2   [U.S.S.G. § 2B1.1(14)(A)(i)]

25
        The USAO will agree to a downward adjustment for acceptance
26
   of responsibility (and, if applicable, move for an additional
27

28                               9

level under § 3E1.1(b) only if the conditions set forth in paragraph 16 are met. Defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments or departures, from either the applicable Offense Level or Criminal History Category, be imposed except, the defendant retains his right to argue for a sentence of probation pursuant to the factors set forth in 18 U.S.C. § 3553(A). The parties hereby stipulate and agree that after his eighteenth birthday, defendant caused $19,594 worth of loss and damage from his conduct and that the loss amount (for guideline calculation purposes) should not include any conduct that occurred while he was a juvenile. If, however, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously  undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section.

14.  There is no agreement as to defendant's criminal history or criminal history category.

15.  The stipulations in this agreement do not bind either the United States Probation Office or the Court. Both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating

1  to the calculation of the sentence, and (c) argue on appeal and

2  collateral review that the Court's sentencing guidelines

3  calculations are not error, although each party agrees to

4  maintain its view that the calculations in paragraph 13 are

5  consistent with the facts of this case.

6                    DEFENDANT'S OBLIGATIONS

7  _____16.  Defendant agrees that he or she will:

8            a) Plead guilty as set forth in this agreement.

9            b) Not knowingly and willfully fail to abide by all

10 sentencing stipulations contained in this agreement.

11           c) Not knowingly and willfully fail to: (i) appear as

12 ordered for all court appearances, (ii) surrender as ordered for

13 service of sentence, (iii) obey all conditions of any bond, and

14 (iv) obey any other ongoing court order in this matter.

15           d) Not commit any crime; however, offenses which would

16 be excluded for sentencing purposes under U.S.S.G. § 4A1.2(c) are

17 not within the scope of this agreement.

18           e) Not knowingly and willfully fail to be truthful at

19 all times with Pretrial Services, the U.S. Probation Office, and

20 the Court.

21           f) Pay the applicable special assessment at or before

22 the time of sentencing unless defendant lacks the ability to pay.

23 17.  Defendant further agrees to cooperate fully with the

24 USAO, the Federal Bureau of Investigation, and, as directed by

25 the USAO, any other federal, state, or local or foreign law

26 enforcement agency.  This cooperation requires defendant to:

27

28                         11

a)   Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

b)   Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by the USAO or compelled by subpoena or court order.

c) Produce voluntarily all information, documents, records, or other tangible evidence relating to matters about which the USAO or the FBI, or their designee(s), inquires.

d) Defendant's obligation to cooperate includes during any period of supervised release or probation imposed by the court.

SUPERVISED RELEASE CONDITIONS RELATED TO COMPUTER USAGE

18.   Defendant agrees to abide by the following supervised release conditions:

a) Defendant shall not possess or use a device with access to any online service at any location without the prior approval of the Probation Officer.  This includes access through any Internet service provider, bulletin board system, or any public or private computer network system.  Further, defendant shall not have another individual access the Internet on defendant's behalf to obtain files or information that defendant is restricted from accessing personally, or accept restricted files or information from another person;

b) Defendant shall use only those computers, computer-related devices, screen/user names, passwords, e-mail accounts,

12

1   and Internet Service Providers (ISPs) approved by the Probation
2   Officer.  Computer and computer-related devices include, but are
3   not limited to, personal computers, personal data assistants
4   (PDAs), Internet appliances, electronic games, and cellular
5   telephones, as well as peripheral equipment, that can access, or
6   can be modified to access, the Internet, electronic bulletin
7   boards, other computers, or similar media.  Defendant shall use
8   any approved computers only within the scope of his employment.
9   Defendant shall not access a computer for any other purpose.
10  Defendant shall immediately report any changes in defendant's
11  employment affecting defendant's access and/or use of computers
12  or the Internet, including e-mail;
13          c) All computers, computer-related devices, computer
14  storage media, and peripheral equipment used by defendant shall
15  be subject to search and seizure, and subject to the installation
16  of search and/or monitoring software and/or hardware, including
17  unannounced seizure for the purpose of search.  Defendant shall
18  not add, remove, upgrade, update, reinstall, repair, or otherwise
19  modify the hardware or software on any computers, computer-
20  related devices, or peripheral equipment without the prior
21  approval of the Probation Officer, nor shall defendant hide or
22  encrypt files or data.  Further, defendant shall, as requested by
23  the Probation Officer, provide all billing records, including
24  telephone, cable, Internet, satellite, and similar records.
25                      THE USAO'S OBLIGATIONS
26          19.  If defendant complies fully with all defendant's
27
28                              13

obligations under this agreement, the USAO agrees:

      a) To abide by all sentencing stipulations contained in this agreement.

      b) At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, to recommend a two-level reduction in the applicable sentencing guideline offense level, pursuant to U.S.S.G. § 3E1.1, and to recommend and, if necessary, move for an additional one-level reduction if available under that section.

      c) To recommend that defendant be sentenced at the low end of the applicable Sentencing Guideline.

      d) Not to offer as evidence in its case-in-chief in the above-captioned case or any other prosecution that may be brought against defendant by the USAO, or in connection with any sentencing proceeding in any case that may be brought against defendant by the USAO, any statements made by defendant or documents, records, or tangible evidence provided by defendant pursuant to this agreement. Defendant agrees, however, that the USAO may use such statements, documents, records, and tangible evidence: (1) to obtain and pursue leads to other evidence, which evidence may be used for any purpose, including any prosecution of defendant, (2) to cross-examine defendant should defendant testify, or to rebut any evidence, argument or representations made by defendant or a witness called by defendant in any trial, sentencing hearing, or other court proceeding, and (3) in any

1  prosecution of defendant for false statement, obstruction of

2  justice, or perjury.

3          e)   Not to use any information provided by defendant

4  pursuant to this agreement against defendant at sentencing for

5  the purpose of determining the applicable guideline range,

6  including the appropriateness of an upward departure, and to

7  recommend to the Court that such information not be used in

8  determining the sentence to be imposed.  Defendant understands,

9  however, that information provided by defendant pursuant to this

10  agreement will be disclosed to the probation office and the

11  Court, and that the Court may use this information for the

12  purposes set forth in U.S.S.G. § 1B1.8(b) and for determining the

13  sentence to be imposed.

14          g)   Not to charge defendant with aggravated identity

15  theft in violation of 18 U.S.C. § 1028A in connection with the

16  scheme described in the statement of facts at Attachment A.

17  DEFENDANT'S UNDERSTANDINGS REGARDING SUBSTANTIAL ASSISTANCE

18      20.  Defendant understands the following:

19          a)   Any knowingly false or misleading statement by

20  defendant will subject defendant to prosecution for false

21  statement, obstruction of justice, and perjury and will

22  constitute a breach by defendant of this agreement.

23          b)   Nothing in this agreement requires the USAO or any

24  other prosecuting or law enforcement agency to accept any

25  cooperation or assistance that defendant may offer, or to use it

26  in any particular way.

27

28                              15

c)   Defendant cannot withdraw defendant's guilty plea if the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 or 18 U.S.C. § 3553(e) for a reduced guideline range or if the USAO makes such a motion and the Court does not grant it or if the Court grants such a USAO motion but elects to sentence above the reduced range.

d)   At this time the USAO makes no agreement or representation as to whether any cooperation that defendant has provided or intends to provide constitutes substantial assistance.  The decision whether defendant has provided assistance.  The decision whether defendant has provided substantial assistance rests solely within the discretion of the USAO.

e)   The USAO's determination of whether defendant has provided substantial assistance will not depend in any way on whether the government prevails at any trial or court hearing in which defendant testifies.

BREACH OF AGREEMENT

21.  If defendant, at any time between the execution of this agreement and the completion of defendant's cooperation pursuant to the agreement or defendant's sentencing on a non-custodial sentence or surrender for service on a custodial sentence, whichever is later, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  For example, if the defendant knowingly in an interview, before a grand jury, or at trial, falsely accuses another person of criminal conduct or

16

falsely minimizes his own role, or the role of another, in criminal conduct, he will have breached this agreement.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, defendant will not be able to withdraw defendant's guilty plea, and the USAO will be relieved of all of its obligations under this agreement.  In particular:

a)   The USAO will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crime to which defendant has pleaded guilty.

b)   The USAO will no longer be bound by any agreements regarding criminal prosecution, and will be free to prosecute defendant for any crime, including charges that the USAO would otherwise have been obligated not to prosecute pursuant to this agreement.

c)   The USAO will be free to prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

d)   The USAO will no longer be bound by any agreement regarding the use of statements, documents, records, tangible evidence, or information provided by defendant, and will be free to use any of those in any way in any investigation, prosecution, or civil or administrative action.  Defendant will not be able to assert either (1) that those statements, documents, records, tangible evidence, or information were obtained in violation of the Fifth Amendment privilege against compelled self-

17

incrimination, or (2) any claim under the United States
Constitution, any statute, Rule 11(f) of the Federal Rules of
Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or
any other federal rule, that statements, documents, records,
tangible evidence, or information provided by defendant before or
after the signing of this agreement, or any leads derived
therefrom, should be inadmissible.

22.  Following a knowing and willful breach of this
agreement by defendant, should the USAO elect to pursue any
charge that was dismissed or not filed as a result of this
agreement, then:

a) Defendant agrees that any applicable statute of
limitations is tolled between the date of defendant's signing of
this agreement and the commencement of any such prosecution or
action.

b) Defendant gives up all defenses based on the statute
of limitations, any claim of preindictment delay, or any speedy
trial claim with respect to any such prosecution, except to the
extent that such defenses existed as of the date of defendant's
signing of this agreement.

LIMITED MUTUAL WAIVER OF APPEAL AND COLLATERAL ATTACK

23.  Defendant gives up the right to appeal any sentence
imposed by the Court, including any order of restitution, and the
manner in which the sentence is determined, provided that (a) the
sentence is within the statutory maximum specified above and is
constitutional, (b) the Court in determining the applicable

18

1  guideline range does not depart upward in offense level or

2  criminal history category and determines that the total offense

3  level is 14 or below, and (c) the Court imposes a sentence within

4  or below the range corresponding to the determined total offense

5  level and criminal history category.  Defendant also gives up any

6  right to bring a post-conviction collateral attack on the

7  conviction or sentence, including any order of restitution,

8  except a post-conviction collateral attack based on a claim of

9  ineffective assistance of counsel, a claim of newly discovered

10  evidence, or a explicitly retroactive change in the applicable

11  Sentencing Guidelines, sentencing statutes, or statutes of

12  conviction.  Notwithstanding the foregoing, defendant retains the

13  ability to appeal the court's determination of defendant's

14  criminal history category and the conditions of probation or

15  supervised release imposed by the court, with the exception of

16  the following: standard conditions set forth in district court

17  General Orders 318 and 01-05; the drug testing conditions

18  mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol

19  and drug use conditions authorized by 18 U.S.C. § 3563(b)(7); and

20  the computer conditions set forth in paragraph 18.

21     24.  The USAO gives up its right to appeal the Court's

22  sentence, provided that (a) the Court in determining the

23  applicable guideline range does not depart downward in offense

24  level or criminal history category (except by a downward

25  departure in offense level pursuant to, and to the extent

26  requested by, the USAO in a motion under U.S.S.G. § 5K1.1), (b)

27

28                                    19

the Court determines that the total offense level is 14 or above prior to any departure under U.S.S.G. § 5K1.1, and (c) the Court imposes a sentence within or above the range corresponding to the determined total offense level (after any downward departure under U.S.S.G. § 5K1.1) and criminal history category.

<u>COURT NOT A PARTY</u>

25.   The Court is not a party to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' stipulations.  Even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from any stipulation, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  No one – not the prosecutor, defendant's attorney, or the Court – can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

26.   Except as set forth herein, there are no promises, understandings or agreements between the USAO and defendant or defendant's counsel.  Nor may any additional agreement, understanding or condition be entered into unless in a writing signed by all parties or on the record in court.

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

27.   The parties agree and stipulate that this Agreement

20

1  will be considered part of the record of defendant's guilty plea

2  hearing as if the entire Agreement had been read into the record

3  of the proceeding.

4      This agreement is effective upon signature by defendant and

5  an Assistant United States Attorney.

6  AGREED AND ACCEPTED

7  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF CALIFORNIA

8

9  THOMAS P. O'BRIEN
   United States Attorney

10

11  Michael Zweiback                    6-20-08

12  MICHAEL ZWEIBACK                    Date
    Assistant United States Attorney

13  Chief, Cyber & Intellectual Property Crimes Section

14  //

15  //

16  //

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27

28                        21

I have read this agreement and carefully discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.  My attorney has advised me of my rights, of possible defenses, of the Sentencing Guideline provisions, and of the consequences of entering into this agreement.  No promises or inducements have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  Finally, I am satisfied with the representation of my attorney in this matter.


_____          06-12-08
JASON MICHAEL MILMONT                      Date
Defendant


I am Jason Michael Milmont's attorney.  I have carefully discussed every part of this agreement with my client.  Further, I have fully advised my client of his/her rights, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this agreement.  To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.


_____          6/12/08
ROBERT ROSE                                Date
Counsel for Defendant
Jason Michael Milmont


22

<u>CERTIFICATE OF SERVICE</u>

I, **SUSAN M. CRUZ**, declare:

That I am a citizen of the United States and resident or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:
**PLEA AGREEMENT FOR DEFENDANT JASON MICHAEL MILMONT**

**service was:**

[] Placed in a closed envelope, for collection and interoffice delivery addressed as follows:

[✓] Placed in a sealed envelope for collection and mailing via United States Mail, addressed as follows:

[] By hand delivery addressed as follows:

[] By facsimile as follows:

[] By messenger as follows:

[] By federal express as follows:

**ROBERT R. ROSE, ESQ.**
**1107 WEST SIXTH AVE.**
**CHEYENNE, WY 82001**
**OFFICE: (307) 635-7445**

This Certificate is executed on **June 26, 2008**, at Los Angeles, California.

I certify under penalty of perjury that the foregoing is true and correct.

SUSAN M. CRUZ